IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>PAUL CASEY KREHBIEL and JEFFREY MICHAEL EMERY,<br><br>            Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:08-CR-604TC |

      The grand jury indicted Defendants Paul Krehbiel and Jeffrey Emery on a charge of illegal possession of firearms in violation of 18 U.S.C. § 922(g)(1). Mr. Emery argues that evidence seized in a search of his hotel room must be suppressed because Mr. Krehbiel, who allowed law enforcement officers to enter the hotel room, lacked authority to consent to the search. Mr. Krehbiel argues that statements he made during the search must be suppressed because he was subjected to custodial interrogation without adequate Miranda warnings.

      The court concludes that Mr. Krehbiel was without actual or apparent authority to consent the search of the room and, accordingly, Mr. Emery's motion to suppress is GRANTED. The court also finds that Mr. Krehbiel was not in custody before being placed under formal arrest. But the government did not show that he received adequate Miranda warnings after being arrested. Mr. Krehbiel's motion to suppress is GRANTED for statements made to the officers after he was formally placed under arrest.

**BACKGROUND**

Events of August 4

On August 4, 2007, at approximately 9:00 pm, Detective Brett Miller of the Taylorsville City Police Department was investigating a possible stolen vehicle incident at the Intown Suites in Midvale, Utah. Just as he arrived at the Intown Suites, Detective Miller saw two men walking away from a red Pontiac. The men crossed the driveway in front of Detective Miller's car, and he saw that they carried items that could be shotguns. One man carried a long, soft gun case and the other was carrying an object concealed under a blanket that had the shape of a shotgun. The men entered the Intown Suites.

Detective Miller decided to approach the men in the hotel and called the Midvale Police Department to ask for assistance. Sergeant Gregg Olsen and Officer Kresdon Bennett responded to his request. Detective Miller checked the license plate of the red Pontiac and found that it was registered to Cayla Crosby. All three officers entered the hotel and spoke with an employee who told them that he believed the Pontiac was associated with the occupants of room 341. The employee told them the room was registered to Cayla Hatch and a person with the last name of Emery was listed as a guest.[1]

The officers went to room 341. When they knocked on the door, a man who identified himself as Paul Krehbiel answered. Detective Miller was in plainclothes, while the other officers were in uniform. Sergeant Olson had his gun out and pointed down when Mr. Krehbiel answered the door. When he saw that Mr. Krehbiel was not armed, he put the gun in its holster. Detective

---

[1] The hotel registry was not entered into evidence.

Miller asked Mr. Krehbiel if he had been outside at the Pontiac and Mr. Krehbiel answered that he was. Detective Miller recognized Mr. Krehbiel as the individual carrying the object underneath the sheet. Mr. Krehbiel told Detective Miller that the other man he was with was not in the room.

When asked who was in the room, Mr. Krehbiel told the officers that a woman, who the room belonged to, and a child were in the room sleeping. Detective Miller again asked Mr. Krehbiel who was in the room and Mr. Krehbiel responded, "well, you can come in and check." (Jan. 6, 2009 Tr. of Evidentiary Hr'g on Defs.' Mots. Suppress at 13) (hereinafter "Tr.") Mr. Krehbiel opened the door and motioned the officers in with his hand.

The room was small, with a small entry way, a bathroom off the entry way, and two beds. The officers entered the room and stood with their backs to the door. The door swung shut behind them. Because of the number of officers and the size of the room, if Mr. Krehbiel had wished to leave the room one of the officers would have had to move to make way for him.

The officers could see a woman sleeping on one of the beds. Detective Miller asked Mr. Krehbiel where the guns were and Mr. Krehbiel pointed towards the other bed and said they were under the bed and "you can check them." (Tr. at 17) Detective Miller looked under the bed and found a rifle and a shotgun. Detective Miller called dispatch to check the serial numbers of the guns to determine if they were stolen. The officers also saw a spent shotgun shell in a trash can in the entryway.

Mr. Krehbiel continued speaking with Sergeant Olson and Officer Bennett. Officer Bennett asked Mr. Krehbiel when was the last time he had "used;" Mr. Krehbiel told him that it had been about a week. He told the officers that the other man they had seen by the Pontiac was

Mike Emery and that Mr. Emery had recently been released from prison.

Detective Miller checked Mr. Krehbiel's criminal history with dispatch. This check turned up several warrants for Mr. Krehbiel arrest. At this time Mr. Krehbiel was put under arrest.

The officers woke the woman sleeping on the bed, who identified herself as Cayla Hatch. Ms. Hatch took a phone call from Mr. Emery and, at the request of Detective Miller, gave him the phone so that he could speak to Mr. Emery. Detective Miller told Mr. Emery that he had seen him carrying the guns into the room and that it would be better for him to come back to the room. Mr. Emery agreed.

Detective Miller testified that he then "advised . . . Mr. Krehbiel of his rights. I asked him if he understood them. He stated he did. I asked him if he was willing to answer my questions. His response was, 'to a point, yes.'" (Tr. at 22) Mr. Krehbiel admitted to some drug use. He explained where the guns had come from and who was carrying each weapon. He told Detective Miller that he had been staying in the room for about a week. Ms. Hatch also told the officers that Mr. Krehbiel had been staying in the room off and on for about a week.

The officers seized the rifle and the shotgun based on the information that Mr. Emery was a convicted felon and Mr. Krehbiel was a drug user and neither could legally possess firearms. Mr. Emery arrived in the parking lot and Detective Miller advised him he was the subject of an investigation. Detective Miller "advised Mr. Emery of his Miranda rights, which he stated he understood and waived." (Tr. at 27)

The Hotel Room

The testimony at the hearing established that Mr. Emery's former girlfriend, Rebecca

Woodward, had originally rented the hotel room. Several others paid for the room, including Ms. Woodard, Mr. Emery, Mr. Emery's parents, and the LDS church. Mr. Emery's sister, Cayla Hatch, stayed in the room regularly. Mr. Krehbiel visited the room regularly, but did not spend the night there, as far Ms. Hatch knew. Mr. Krehbiel did not keep any of his belongings in the hotel room.

Mr. Emery regularly gave keys to the room to people who were leaving, to get ice for example, and needed to get back into the room. Mr. Krehbiel had been given keys under such circumstances. But Mr. Emery did not give others the key without knowing when they would be returning.

## ANALYSIS

Mr. Emery and Mr. Krehbiel advance separate arguments in their motions to dismiss. Mr. Emery argues that Mr. Krehbiel had neither actual nor apparent authority to consent to a search of the hotel room and, accordingly, the evidence obtained when the officers entered the room should be suppressed. Mr. Krehbiel contends that after the officers entered the hotel room, he was effectively in custody and interrogated without being given the warnings required by Miranda v. Arizona, 384 U.S. 436, 444 (1966). Mr. Krehbiel also maintains that the government did not establish that Officer Miller properly informed him of his rights after he was in custody. Mr. Krehbiel asks that all statements made to the officers on August 4, 2007 be suppressed.

Mr. Emery's Arguments

The Fourth Amendment generally prohibits the government from making a warrantless entry into a person's residence to search for specific objects and this protection extends to guests in motel rooms. United States v. Kimoana, 383 F.3d 1215, 1221 (10th Cir. 2004). But an officer

may make a warrantless search if it is conducted by consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Valid consent can only be given by an individual with either "actual authority" or "apparent authority" to consent to a search of the property. Kimoana, 383 F.3d at 1221. The government bears the burden of proving that consenting party had actual or apparent authority. United States v. Cos, 498 F.3d 1115, 1124 (10th Cir. 2007). Also, to establish a violation of the Fourth Amendment, a defendant must show that he had a reasonable expectation of privacy in the searched premises. United States v. Gordon, 168 F.3d 1222, 1226 (10th Cir. 1999).

Reasonable Expectation of Privacy

The law is clearly established that a person may have a reasonable expectation of privacy in a hotel room. Id. To meet the burden of demonstrating a reasonable expectation of privacy, the Tenth Circuit has "required a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered." Id. Ms. Woodard testified that the room was registered in her name and that she rented the room on behalf of herself and Mr. Emery.[2] The testimony of Ms. Hatch and Ms. Woodard showed that Mr. Emery lived in the room and exercised control over it.

The government contends that Mr. Emery had no reasonable expectation of privacy in the hotel room because he gave keys to numerous people, people came and went at all hours of the

---

[2]Detective Miller testified that a hotel employee told him the room was registered to Ms. Hatch, with Mr. Emery listed as a guest. If offered to establish the actual name on the registration, this testimony is hearsay. Consequently, the only admissible evidence before the court on the question of the name of the registrant is that given by Ms. Woodard, who testified that she rented the room.

day, various people paid for the room, and different names appeared on the guest register. But the evidence does not support this interpretation of the facts. The testimony at the evidentiary hearing demonstrated that Mr. Emery gave keys out only for specific purposes and limited time periods. Although various people paid for the room, all did so for the benefit of Ms. Woodard or Mr. Emery. There is no evidence before the court that the names on the registry of the room changed. The government asks the court to conclude that Mr. Emery had not reasonable expectation of privacy because he frequently entertained guests in the room. But the government has presented no authority to support this argument. The court concludes that Mr. Emery had a reasonable expectation of privacy in the hotel room.

    B.  Actual Authority

"[A] third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." United States v. Rith, 164 F.3d 1323, 1329 (10th Cir.1999). The first test is fact-intensive and requires the government to show that "the third party entered the premises or room at will, without the consent of the subject of the search." Cos, 498 F.3d at 1125 (quotation omitted). The second test "is a normative inquiry dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control for most purposes over the property by the third party. Id. (quotation omitted).

The government has not met its burden for either of these tests.[3] There is no indication

---

[3]The government does not contend that there is a "special relationship" that would establish a presumption of control (e.g. parent and child, husband and wife). United States v. Cos, 498 F.3d 1115, 1128 (10th Cir. 2007).

that Mr. Krehbiel could enter the apartment without Mr. Emery's consent. Although he was given keys for limited purposes, it appears he returned the key to Mr. Emery once Mr. Krehbiel completed whatever purpose he was given it. The government has produced no evidence showing that Mr. Krehbiel spent the night in the room.[4] In Cos, the Tenth Circuit considered a case in which a regular guest of the defendant who occasionally slept in the home gave her consent for a search. The guest was left alone in the home, but did not have a key, needed permission to enter, and permission to invite others over. The court held that the guest's "limited access to the apartment is therefore insufficient to demonstrate actual authority under the first Rith inquiry." Id. at 1127.

The court concludes Mr. Krehbiel had limited access to the hotel room that was dependent on Mr. Emery's permission and, accordingly, had no actual authority to consent to the search.

C. Apparent Authority

Even where a person lacks actual authority to consent to a search, that person may have apparent authority to consent if an officer could have reasonably believed he or she had actual authority. Cos, 498 F.3d at 1128. This is an objective inquiry which asks whether "the facts available to the officer at the moment warrant a man of reasonable caution to believe that the consenting authority had authority over the premises." Id. (quotation and alterations omitted).

---

[4]The government points to Detective Miller's testimony that, after she woke up, Ms. Crosby told them Mr. Krehbiel had been staying in the room for about a week. To the extent the government relies on this to establish Mr. Krehbiel was staying in the room for a week, it is inadmissible hearsay. In her testimony at the evidentiary hearing, Ms. Crosby maintained that Mr. Krehbiel visited the room often, but did not spend the night. Ms. Crosby admitted that she wasn't in the hotel room every night.

Furthermore, "where an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent." Id.

The government contends that the officers reasonably believed that Mr. Krehbiel had authority to give consent to enter the hotel room for the following reasons: Detective Miller saw him coming from the Pontiac which was associated with the hotel room; Mr. Krehbiel answered the door; and the only other person in the room was asleep. But this evidence is not persuasive particularly in light of the fact that Mr. Krehbiel told the officers that the owner of the room was in the room, asleep. Cos teaches that this information imposed on the officers a duty to investigate further before accepting Mr. Krehbiel's consent.

Based on the above, the court concludes that the government has not established that Mr. Krehbiel had any authority to consent to the search of the room.

Mr. Krehbiel's Arguments

Mr. Krehbiel takes the position that he was subject to custodial interrogation when the officers entered the hotel room and spoke with him. Because he did not receive Miranda warnings when the officers entered, he argues that all his statements must be suppressed. Additionally, Mr. Krehbiel maintains the government failed to prove that he received a valid Miranda warning after his arrest and consequently, the court should suppress all statements he made following his arrest.

A. Custodial Interrogation

Police officers must administer Miranda warnings to an individual if the individual is in custody, and the individual is subjected to questioning that meets the legal definition of

interrogation. United States v. Revels, 510 F.3d 1269, 1273 (10th Cir. 2007).[5] An individual is in custody if he has been deprived of his freedom of action to a degree associated with formal arrest. Id. The inquiry is an objective one which asks "whether a reasonable person in the suspect's position would have understood [his] situation as the functional equivalent of formal arrest." Id. (quotation and alterations omitted).

The Tenth Circuit has identified several factors that a court must consider. A court must ask "whether the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will and the nature of the questioning, including whether the questioning is prolonged and accusatory." United States v. Chee, 514 F.3d 1106, 1112-13 (10th Cir. 2008). Another factor is "whether the environment was 'police dominated.'" Id. at 1113. Considerations relevant to determining whether the encounter was police dominated include whether the defendant was "isolated in a nonpublic questioning room, whether there was the threatening presence of several officers, whether there was any display of weapons or physical contact with the suspect, and whether the officer's language and tone indicated that compliance might be compelled." Id.

Mr. Krehbiel was not in custody before his formal arrest. Significantly, Mr. Krehbiel himself asked the officers into the hotel room. The questioning of Mr. Krehbiel was brief and the officers did not raise their voices nor is there any evidence that their questioning was hostile or aggressive. The court has considered the fact that Mr. Krehbiel was faced with three officers,

---

[5] Here the government argues only that Mr. Krehbiel was not in custody prior to being arrested for the outstanding warrants. The court will therefore assume Mr. Krehbiel was interrogated.

two of whom were in uniform.  Moreover, one of the officers had his weapon drawn when Mr. Krehbiel answered the door.  The tone of the encounter was somewhat accusatory when Detective Miller told Mr. Krehbiel that he had seen him with guns and asked him where the guns were.  But when all the factors are weighed, the court finds that Mr. Krehbiel was not in custody.

### B.  Valid *Miranda* Warnings

After the officers learned that Mr. Krehbiel had outstanding warrants for his arrest, they formally placed him under arrest.  "Miranda warnings are required when the defendant is in custody and subject to interrogation."  United States v. Griffin, 7 F.3d 1512, 1517-18 (10th Cir. 1993).  The government has the burden of proving that the defendant was given adequate Miranda warnings and that he voluntarily, knowingly, and intelligently waived his rights.  United States v. Nelson, 450 F.3d 1201, 1210-11 (10th Cir. 2006).  The admissibility of any statement given during custodial interrogation of the defendant will depend on "whether the police provided the suspect with the four warnings that Miranda requires."  Id. at 1210 (quotation and alteration omitted).

The government has not met its burden to show that Mr. Krehbiel was adequately informed of his rights.  The only evidence before the court is Detective Miller's testimony that he "advised . . . Mr. Krehbiel of his rights."  (Tr. at 22) The government did not offer any evidence of the content of the rights nor how Detective Miller explained them to Mr. Krehbiel.  There is no evidence that Detective Miller knew the Miranda rights and could explain them.  Such general and conclusory statements, absent any support, are insufficient for the court to find that Mr. Krehbiel was fully and adequately advised of his rights.  See United States v. Gilmer, 793 F. Supp. 1545, 1555 (D. Colo. 1992) (finding government did not meet its burden of showing

Miranda warnings were given where officer "did not explain his understanding of the Miranda rights, nor did he recite the Miranda advisement that was given to defendant."); Ex parte Price, 725 So.2d 1063, 1071 (Ala. 1998) ("[T]he State must spell out with clarity and precision the specific Miranda warnings the police gave to the defendant, because the general question of whether the Miranda warnings were given does not adequately establish whether the warnings were properly given and understood by the defendant." (quotation omitted)).  Accordingly, all statements made after Mr. Krehbiel's formal arrest are inadmissible.

## ORDER

For the foregoing reasons, Mr. Emery's motion to suppress (Docket No. 27) is GRANTED. Mr. Krehbiel's motion to suppress (Docket No. 25) is GRANTED only as to statements made after his formal arrest.

DATED this 16th day of April, 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge